THE UNITED STATES DISTRIC COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| W&T Offshore, Inc., | § | |
| | § | |
| Plaintiff, | § | |
| | § | CIVIL ACTION NO. 15-2951 |
| vs. | § | JURY DEMANDED |
| | § | |
| Tennessee Gas Pipeline Co., | § | |
| | § | |
| Defendant. | § | |

## PLAINTIFF W&T OFFSHORE, INC.'S ORIGINAL COMPLAINT

TO THE HONORABLE UNITED STATES DISTRICT COURT JUDGE:

Plaintiff W&T Offshore, Inc. ("W&T") files its Original Complaint against Defendant Tennessee Gas Pipeline Co. ("TGP") and would show the Court as follows:

## I.
## PARTIES

1. Plaintiff W&T is a Texas corporation with its principal place of business in Houston, Texas.

2. Defendant TGP is a Delaware corporation doing business in the Southern District of Texas, Houston Division, with its principal place of business in Houston, Texas. TGP may be served with process through its registered agent, CT Corporation System, 1999 Bryan St., Suite 900, Dallas, TX 75201-3136.

## II.
## JURISDICTION AND VENUE

3. This Court has jurisdiction over the subject matter and parties in this case as this dispute arises under the laws of the United States, specifically the Outer Continental Shelf Lands Act, 43 U.S.C. §1331 *et. seq*.

4. Venue is proper in the Southern District of Texas, Houston Division, pursuant to 28 U.S.C. §1391(b) and (c) and 43 U.S.C. §1349(b)(1)(B).

### III.
### OVERVIEW

5. W&T (as successor in interest to The Louisiana Land & Exploration Company) is one of the platform owners ("Platform Owner") of an oil and gas platform offshore Louisiana known as the Eugene Island 371 "B" Platform ("EI 371B" or the "Platform"). W&T is the operator of the Platform ("Platform Operator") and files this lawsuit as Platform Operator on behalf of all owners of the Platform (the "Platform Owners").

6. Effective February 1, 2007, Platform Owners and TGP entered into the Eugene Island Block 371 Offshore Platform Space Lease Agreement ("the Agreement"). Platform Owners are the lessors under the Lease ("Lessors") and TGP is the lessee ("Lessee").

7. Pursuant to the Agreement, TGP constructed and leased additional deck space ("Leased Premises") from Platform Owners, as well as maintained facilities on the Leased Premises including a natural gas measurement station, connecting piping and pig launching facilities, gas and liquids separation and a pipeline riser ("Lessee's Facilities"). In exchange, TGP paid Platform Operator, on behalf of Platform Owners, various fees including an initial platform fee, a monthly rental fee, regulatory costs, and other fees and costs. Further, in the event of termination of the Agreement, TGP agreed to remove and abandon the Lessee's Facilities as its sole cost and expense. In addition, TGP retained ownership of the Lessee's Facilities and responsibility for all costs associated with the Lessee's Facilities.

8. On September 9, 2008, Hurricane Ike struck the GOM and the hurricane toppled the entire Platform to the ocean bed, including the Leased Premises. W&T, as Platform Operator of EI 371B, determined that it was economically unfeasible to repair or replace the Platform, and

thus made the decision to abandon it.  Accordingly, W&T informed TGP, among others, of its intent to abandon the Platform, and informed TGP of its responsibility to remove the Lessee's Facilities[1].  W&T also offered to coordinate the abandonment operations, or perform the abandonment operations for TGP, subject to reimbursement from TGP for the abandonment of the Lessee's Facilities.

9. After correspondence between W&T and TGP regarding the abandonment, TGP refused to participate or pay its share to abandon the Lessee's Facilities.  Therefore, as required by the Bureau of Safety and Environmental Enforcement ("BSEE"), W&T abandoned the Platform and the Lessee's Facilities.  The abandonment process was completed in 2014.

10. W&T made demand upon TGP for its portion of the abandonment costs which were proportionate to the cost relating to the Lessee's Facilities.  However, TGP has failed and refused, and continues to fail and refuse, to pay the amounts due.  Rather, TGP contends that since it did not have the right of ingress and egress to the Platform to perform the abandonment, TGP had no obligation to abandon the Lessee's Facilities or pay any portion of the abandonment costs.

## IV.
## THE AGREEMENT

11. Pursuant to Paragraph 2.4 of the Lease, title to and ownership of the Lessee's Facilities remained with TGP and TGP remained responsible for **all costs in any way associated with** the Lessee's Facilities.

12. Consistent with Paragraph 2.4 of the Lease, TGP was obligated to abandon the Lessee's Facilities.  Paragraph 4.2 of the Agreement governs abandonment of the Lessee's

---

[1] ANR Pipeline Company ("ANR") also leased space on the Platform and was informed of the decision to abandon same.  ANR, however, acknowledged its obligation to abandon the Platform and paid its portion of the abandonment costs.

Facilities and provides, in pertinent part, as follows:

> In the event that the termination of this Agreement …, **Lessee, within 60 days after such termination, at its sole cost and expense, shall be responsible for salvaging, removing and abandoning Lessee's Facilities to which Lessee holds title or ownership.** Such salvage, removal and abandonment operations shall include isolation of Lessee's risers and interconnecting piping, removal of Lessee's measurement facilities, associated equipment and interconnecting piping from the Platform, subsequent cleanup and painting of the area on the Platform that is occupied by Lessee's Facilities, and, if Lessor deems it necessary, the repair and/or replacement of any and all damage to the Platform, equipment and facilities resulting from the removal of Lessee's Facilities.

(Emphasis added.)

13. Paragraph 3.3 of the Agreement further confirms TGP's obligation to abandon the Lessee's Facilities. Subpart 1 of paragraph 3.3 provides that "Non-Routine Operations" include any operation for the Lessee's Facilities that would not be considered a routine operation…." including "**removal…of…facilities**…." Subparagraph 6 of paragraph 3.3 provides that "all Non-Routine Operations shall be conducted **at Lessee's sole cost, risk and expense**."

14. Paragraphs 2.4, 3.3 and 4.2 of the Agreement clearly obligate TGP to abandon the Lessee's Facilities. Rather than comply with the paragraph, TGP argued that it had no responsibility to abandon the Lessee's Facilities or pay any portion of the costs associated with the abandonment due to the fact that it did not have ingress and egress to the Platform. TGP relies upon paragraph 2.3 of the Agreement entitled "Access to Leased Premises and Platform" to support this contention, the pertinent provisions of which follow:

> **Following the receipt of Platform Operator's approval of the aforementioned drawings and installation procedures, Lessee shall communicate to Platform Operator the timing of the commencement of such construction and installation for Lessee's Facilities subject to the following:** (a) Lessee shall provide Platform Operator with prior written notice of, and obtain permission prior to boarding the Platform to perform any operation, so as to allow Platform Operator, at its discretion, to witness such operation; (b) **upon receipt of such notice, and if Platform Operator determines that there will be no unreasonable conflict or interference with other present or planned operations on the Platform, Lessee and its contractors and**

4

>  **subcontractors shall have the right of ingress and egress to the Platform and Leased Premises,** including the right to land helicopters on the Platform heliports and to moor vessels to the Platform mooring facilities, for the purpose of 1) constructing the Additional Deck Space; and 2) installing, operating, maintaining, repairing, replacing and removing Lessee's Facilities under the terms of this Agreement; (c) Lessee shall promptly remove its helicopters and vessels from time to time if Platform Operator should need, respectively, the Platform heliport or mooring facilities; such access, and all operations conducted hereunder by Lessee, shall be at Lessee's sole risk and expense and must be accomplished so as to not unreasonably interfere with Lessor's operations and activities on the Platform under the terms of this Agreement.

(Emphasis added.)

Paragraph 2.3 upon which TGP relies does not relate to abandonment of the Platform. Rather, it relates to commencing construction and installation.

## V.
## HURRICANE IKE

15. On September 9, 2008, Hurricane Ike struck and toppled the Platform. In fact, the Platform was on the seafloor and the wells were bent over. Since it was determined that it was economically unfeasible to repair the Platform, W&T, as Platform Operator, was required by BSEE to abandon the Platform and plug the wells. W&T informed TGP of the need to abandon the Platform (a necessity imposed by BSEE) and TGP's responsibility to abandon the Lessee's Facilities.

16. TGP initially responded by stating that it "would consider" contributing up to 12% of the abandonment costs or making a settlement payment of $2.8 million (which, at the time made, represented **15%** of W&T's total estimated abandonment costs). Thereafter, in an about face, TGP refused to contribute any amount toward the cost to abandon the Platform, arguing that the Agreement did not contemplate hurricane damage and that since it had no right to ingress or egress the Platform, it did not owe any portion of the abandonment costs.

5

## VI.
## ABANDONING THE PLATFORM

17. BSEE required W&T to begin the abandonment process by August 31, 2010. Due to the extensive damage to the Platform and associated wells, the abandonment process took approximately 3½ years. As Platform Operator, W&T was responsible for abandoning the Platform and wells, ensuring that the abandonment complied with all federally-mandated standards, and paying for the costs associated with the abandonment, subject to reimbursement from TGP as to its share of costs attributable to abandonment of the Lessee's Facilities.

18. The final cost to TGP for its portion of abandonment costs is $4,093,518.43. In addition to the fact that the Lessee's Facilities were owned by TGP, the Agreement (which clearly contemplated weather related perils - including, but not limited to, hurricanes - and the possibility of damage to the Platform, damage to the Lessee's Facilities and even loss of the Lessee's Facilities) required TGP to abandon the Lessee's Facilities. Removal of the Lessee's Facilities was to be at the sole cost and expense of TGP, and TGP has refused to pay for its share of costs attributable to abandonment of the Lessee's Facilities. By refusing to pay, TGP forced the Platform Owners to pay all costs associated with abandonment of property that TGP owned.

## VII.
## BREACH OF CONTRACT

19. W&T complied with all conditions precedent and contractual obligations under the Agreement. However, TGP has failed and refused to abide by its contractual obligations to pay its portion of the abandonment costs pertaining to the Leased Facilities. TGP's failure to pay for its portion of the abandonment costs for the Leased Facilities has proximately caused damage to Platform Owners. Therefore, W&T, as Platform Operator on behalf of Platform Owners, seeks recovery of any and all damages proximately caused by TGP's breach of the Agreement.

## VIII.
## UNJUST ENRICHMENT

20. In the alternative, should TGP somehow prevail (which it should not) on its claim that TGP did not owe any portion of the abandonment costs because the Agreement did not contemplate hurricane damage and/or because TGP had no right to ingress or egress the Platform, W&T brings this claim for unjust enrichment. As Platform Operator, W&T paid TGP's portion of the abandonment costs pertaining to property that TGP owned (the Leased Facilities), yet TGP has not reimbursed W&T for these costs, and thus TGP has been unjustly enriched. TGP's failure to pay its portion of the abandonment costs for the Leased Facilities has proximately caused damage to W&T, as Platform Operator on behalf of Platform Owners.

## IX.
## DECLARATORY JUDGMENT

21. W&T, as Platform Operator on behalf of Platform Owners., seeks a declaration by the Court regarding the rights and obligations of the parties under the Agreement pursuant to 28 U.S.C. §2201 and Federal Rule of Civil Procedure 57. A justiciable controversy exists which makes this suit ripe for declaratory judgment as W&T seeks a declaration of TGP's obligations under the Agreement as follows:

(a) That the Court declare that the Agreement has terminated;

(b) That the Court declare that Paragraphs 2.4, 3.3 and 4.2 of the Agreement govern TGP's liability for abandonment of the Leased Premises; and

(c) That the Court declare that pursuant to Paragraphs 2.4, 3.3 and 4.2 of the Agreement, TGP is responsible for the costs W&T incurred in abandoning the Lessee's Facilities.

## X.
## ATTORNEY'S FEES

22. W&T seeks recovery of its reasonable and necessary attorney's fees incurred in

bringing these claims as provided by agreement, statute or as otherwise provided by law.

## XI.
## JURY DEMAND

23. W&T hereby demands a jury trial on all matters herein pursuant to Federal Rule of Civil Procedure 38 and Local Rule 38.1.

WHEREFORE, Plaintiff W&T Offshore, Inc., as Platform Operator on behalf of Platform Owners, prays for a judgment against Defendant Tennessee Gas Pipeline Co. as set forth herein. W&T Offshore also prays for such other and further relief as the Court may deem just, necessary, proper or equitable.

           Respectfully submitted,

           JOHNSON DELUCA KURISKY & GOULD, P.C.

      By:   */s/ Bradley L. DeLuca*
              Bradley L. DeLuca
              Attorney-in-charge
              State Bar No. 05653800
              4 Houston Center
              1221 Lamar Suite 1000
              Houston, Texas 77010
              Telephone: (713) 652-2525
              Facsimile: (713) 652-5130
              Email: bdeluca@jdkglaw.com

Of Counsel:

JOHNSON DELUCA KURISKY & GOULD, P.C.
Brigid D. Ashcraft
bashcraft@jdkglaw.com
State Bar No. 01372450
4 Houston Center
1221 Lamar Suite 1000
Houston, Texas 77010
Telephone: (713) 652-2525
Facsimile: (713) 652-5130

**ATTORNEYS FOR PLAINTIFF W&T OFFSHORE, INC.**